UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Jason J. Lucas, | : | Hon. Joseph H. Rodriguez |
| | : | |
| Plaintiff, | : | Civil Action No. 05-CV-3346 |
| | : | |
| | : | |
| Galloway Township Police Department, | : | MEMORANDUM OPINION |
| Township of Galloway, Hamilton | : | & |
| Township Police Department, Township | : | ORDER |
| of Hamilton, Chief of Police Keith M. | : | |
| Spencer, Chief of Police Jay McKeen, | : | |
| Officer Kevin Welsh, Officers John Does | : | |
| (1-20), Fictious Names and | : | |
| Officers John Does (21-40), Fictitious | : | |
| Names, | : | |
| | : | |
| Defendants. | : | |

This matter comes before the Court on the motion of Defendants Township of
Galloway Police Department, Township of Galloway, Chief of Police Keith M. Spencer,
and Officer Kevin Welsh (collectively, "Galloway Defendants") and on a separate motion
of Defendants Hamilton Township Police Department, Township of Hamilton, and Chief
of Police Jay McKeen (collectively, "Hamilton Defendants") for summary judgment
pursuant to Fed. R. Civ. P. 56.  For the reasons discussed below, as well as those placed
on the record during oral argument on June 14, 2007, the Galloway Defendants' motion
will be granted in part and denied in part and the Hamilton Defendants' motion will be
granted.

## I. BACKGROUND

On May 15, 2003, the Hamilton Township Municipal Court issued three warrants
for the arrest of a Jason Lucas residing at 94 Club Place, Galloway Township, New
Jersey.  (Barker Certif., Exh. B.)  The warrants were issued for passing bad checks at the

Wal-Mart in Hamilton Township, New Jersey.  (Id.)  The warrants contained only the name "Jason Lucas," the address 94 Club Place, Galloway, New Jersey, and the crimes charged, but were left blank as to a physical description of the suspect, date of birth, social security number, and driver's license number.  (Id.)  The court that issued the warrants had possession of the checks from PNC Bank on which was written a Maryland driver's license number.  (Id., Exh. C at 2.)

Plaintiff Jason J. Lucas, was not the suspect named in the warrants.  (Id.)  Jason J. Lucas had never lived at 94 Club Place, did not bank at PNC bank, nor had he written checks at the Wal-Mart in Hamilton Township.  (Jason J. Lucas Deposition at 10, 19.)  The actual suspect was Jason A. Lucas who formerly resided at 94 Club Place and had a Maryland driver's license number matching that on the bad checks.  (Barker Certif., Exh. C at 2.)  The proper Jason Lucas eventually was identified pursuant to an investigation by Galloway Township police officer Christopher Doyle, a family friend of Jason J. Lucas.  (Id.)

Around May 20, 2003, the Galloway Township Police Department received the warrants, (Reynolds Certif., Exh. C at Galloway 15, 16), and unsuccessfully attempted to serve them at 94 Club Place.  (Id. at Galloway 17.)  On May 21, 2003, Officer Kevin Welsh of the Galloway Police Department attempted to execute the warrants again at the same address.  (Id. at Galloway 18.)  Officer Welsh was informed that Jason Lucas did not reside at that address and he subsequently contacted Galloway Police dispatch for a new address.  (Welsh Affidavit at ¶ 6.)  After entering the name Jason Lucas into CAD, a computer system with a name database, dispatch gave Officer Welsh an address of 622 South Second Avenue, Galloway Township.  (Id. at ¶ ¶ 6-8.)  Officer Welsh, along with

two other patrol officers, went to that address where they were met by William Lucas, Plaintiff's father. (William Lucas Affidavit at ¶ 2.) Officer Welsh informed William Lucas that Plaintiff was wanted for passing bad checks and that there was a warrant for his arrest. (Id.) He informed William Lucas that Plaintiff should report to the Hamilton Township Police Department or Plaintiff would be arrested. (Id.) William Lucas contacted Plaintiff, who immediately went to Hamilton Township. (Jason J. Lucas Affidavit 9/19/2006 at ¶¶ 3-4.)

Plaintiff was met at the police department by Hamilton Police Officer Christopher Robell. (Robell Deposition at 5, lines 16-23.) Plaintiff informed Officer Robell that he was there to turn himself in on an outstanding warrant, but that he was not the person named in the warrant. (Id. at 6, lines 4-10.) After looking at the warrant and seeing that there were no identifiers and after looking at Plaintiff's driver's license and bank card, Officer Robell called the on-duty court clerk. (Id. at 6, lines 15-18.) She advised Officer Robell to have Plaintiff come to the court the following day. (Id. at 6, lines 15-18.)

At some point in time, Officer Robell called his sergeant and discussed releasing Plaintiff "ROR." (Jason J. Lucas Deposition at 20-21.) Plaintiff then left and returned to the Hamilton Township Municipal Complex the next day, May 22, 2003. (Id. at 24, lines 17-24.) Plaintiff met with someone from the court and explained to her that he was not the person named in the warrants. (Id. at 24, lines 22-24.) She told him that he would still have to go before the judge, which Plaintiff did that day. (Id. at 25, lines 4-5.) The judge read the charges against Plaintiff and he pled not guilty. (Id. at 26, lines 9-21.) Plaintiff appeared in Hamilton Township Municipal Court again on June 18, 2003 to face the charges against him, (id. at 35), but they were dismissed when a

3

representative from Wal-Mart failed to appear.  (Id.)  Nevertheless, Plaintiff was required to appear before the Superior Court to have his record expunged.  (Id. at 36.)

On May 18, 2005, Plaintiff commenced this action in the Superior Court of New Jersey, Law Division, Atlantic County, against Galloway Township Police Department ("Galloway Police Department"), Township of Galloway ("Galloway" or "Galloway Township"), Hamilton Township Police Department ("Hamilton Police Department"), Township of Hamilton ("Hamilton" or "Hamilton Township"), Chief of Police Keith M. Spencer ("Chief of Police Spencer"), Chief of Police Jay McKeen ("Chief of Police McKeen"), Officer Kevin Welsh ("Officer Welsh"), Officers John Does (1-20), and Officers John Does (21-40).  The action was removed to the District of New Jersey pursuant to 28 U.S.C. § 1446 by Defendants Galloway Township, Galloway Police Department, Chief of Police Spencer, and Officer Welsh.  The same Defendants filed a motion for summary judgment on September 5, 2006.  Defendants Hamilton Township, Hamilton Police Department, and Chief of Police McKeen filed a separate motion for summary judgment on November 15, 2006.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c)  An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's

4

favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

## B. Galloway Police Department and Hamilton Police Department

The Court will grant the motions for summary judgment as to Galloway Township Police Department and Hamilton Township Police Department.  In New Jersey, a municipal police department is not an entity separate from the municipality. Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997) (holding police department and municipality same for § 1983); Adams v. City of Camden, 461 F. Supp. 2d 263, 266 (D.N.J. 2006) (holding police departments cannot be sued in conjunction

with municipalities because police departments are administrative arms of municipalities, not separate entities); N.J. Stat. Ann. § 40A:14-118 (municipal police department is "an executive and enforcement function of municipal government"). Therefore, summary judgment is granted for Galloway Police Department and Hamilton Police Department.

## C. Galloway Township, Hamilton Township, Chief of Police Spencer, and Chief of Police McKeen

Summary judgment is also granted for Galloway Township, Hamilton Township, Chief of Police Spencer, and Chief of Police McKeen. A municipality is not liable under 42 U.S.C. § 1983 on a respondeat superior theory. Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691 (1978). A government entity is only liable for its agent's actions where policy or custom of the entity was the "moving force" behind the agent's deprivation of a constitutional right. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)).

Plaintiff has failed to prove any allegations of official policies or customs that caused a constitutional violation in this case. Plaintiff agreed as much at oral argument. Moreover, Plaintiff has not asserted that either Chief of Police is liable in a personal capacity, which is further dispositive. See Anela v. City of Wildwood, 595 F. Supp. 511, 514 (D.N.J. 1984) (holding chief of police not liable for false imprisonment where not acting personally). Lastly, Plaintiff failed to assert a claim against Officer Robell in any capacity, which is an independent ground for summary judgment as to Hamilton Township. Therefore, summary judgment is granted for Galloway Township, Hamilton Township, Chief of Police Spencer, and Chief of Police McKeen.

6

**D. Defendants Officers John Does (1-20) and Officers John Does (21-40)**

Officers John Does (1-20) and Officers John Does (21-40) are dismissed pursuant to Fed. R. Civ. P. 21, which provides in pertinent part: "parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."   This rule permits the Court to exclude John Doe parties from an action when appropriate.  Adams, 461 F. Supp. 2d at 271 (citing Hightower v. Roman, Inc., 190 F. Supp. 2d 740, 754 (D.N.J. 2002); Atlantic Used Auto Parts v. City of Philadelphia, 957 F. Supp. 622, 625 (E.D. Pa. 1997) (holding "fictitious party names may be used 'at least until reasonable discovery permits the actual defendants to assume their places. . . ,' however, . . . '[f]ictitious names must eventually be dismissed, if discovery yields no identities.'")).  Plaintiff filed this action on May 18, 2005.  Galloway Township filed a notice of removal on July 5, 2005, and on March 24, 2006, the Magistrate Judge ordered completion of discovery by August 30, 2006.  Given that the identity of the unnamed Defendants has not been found in the intervening two years since this suit was filed and the nearly ten months since completion of discovery, the interests of justice permit dropping those parties from the suit.  Therefore, Officers John Doe (1-20) and Officers John Doe (21-40) are dismissed.

**E. Qualified Immunity under 28 U.S.C. § 1983–Officer Welsh**

In relevant part, 42 U.S.C. § 1983 provides that a person acting under "the color of law" who deprives a citizen of rights, privileges, or immunities guaranteed by the Constitution and laws of the United States is subject to liability.  Qualified immunity is an affirmative defense for government officials to § 1983 claims.  Schneider v. Simonini, 749 A.2d 336, 345 (N.J. 2000) (citing Gomez v. Toledo, 446 U.S. 635, 640-41 (1980)).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 200, 201 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id.

Qualified immunity is a question of law determined by the Court, and when that determination depends on disputed issues of fact, those facts must be determined by a jury. Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006). The threshold question in a qualified immunity inquiry is: "taken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201. If there would be no violation of a constitutional right under the facts alleged, the Court's inquiry ceases. Id. However, if the facts alleged make out a violation, the Court must ask whether the right was clearly established; in other words, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 201-202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

### 1) Was a constitutional right violated?

Plaintiff alleges a violation of the Fourth and Fourteenth Amendments to the Constitution. (Compl. at ¶5.) Where an amendment provides explicit protection against a particular kind of government action, that amendment is the source of the Court's evaluation of a § 1983 claim rather than the general rights granted by the Fourteenth Amendment. County of Sacramento v. Lewis, 523 U.S. 833, 841 (1998) (citing Albright v. Oliver, 510 U.S. 266, 273 (1994)). Thus, allegations of false arrest or false

8

imprisonment are evaluated under the Fourth Amendment rather than the Fourteenth

Amendment.  See, e.g., United States v. Lanier, 520 U.S. 259, 272 (1997); Berg v. County

of Allegheny, 219 F.3d 261, 268-69 (3d Cir. 2000).

> The Fourth Amendment provides:
>
> The right of the people to be secure in their persons, houses, papers and
> effects, against unreasonable searches and seizures, shall not be violated,
> and no Warrants shall issue, but upon probable cause, support by Oath or
> affirmation, and particularly describing the place to be searched, and
> persons or things to be seized.

Probable cause exists where "'the facts and circumstances within . . . [the officers']

knowledge and of which they had reasonably trustworthy information [are] sufficient in

themselves to warrant a man of reasonable caution in the belief that' an offense has been

or is being committed." Schneider, 749 A.2d at 349-50 (citing Brinegar v. United States,

338 U.S. 160, 175-76 (1949)).  When considering whether probable cause exists, the

Court must look at the "totality of the circumstances." Id. at 350 (citing Illinois v. Gates,

462 U.S. 213, 230-31 (1983)).  Probable cause is less than proof needed to convict, but

more than mere suspicion.  Id.

Construing the facts in a light most favorable to the Plaintiff, Officer Welsh's

conduct makes out a violation of Plaintiff's constitutional right to be free from seizure

without probable cause.  While the facts of this case are truly extraordinary, the Court is

not without some precedent of persons incorrectly seized pursuant to a warrant.  In

Schneider v. Simonini, police investigators secured a warrant for a suspected hijacker

despite lacking the physical description, address, or age of the suspect.  749 A.2d at 342-

43.  Investigators subsequently arrested the wrong person who had the same name.  Id.

However, the court granted qualified immunity because the officer seeking the warrant

9

relied on substantial information to support his affidavit.  Id. at 358-30 (e.g. advice of counsel, information from two informants, DMV records check, imminency of future crimes).

Likewise, in Kerns v. United States, federal officers in the course of the investigation of a drug ring, incorrectly typed the name of a suspect into a computer database.  Civil No. 04-01937-PHX-NVW, 2007 WL 552227, *5 (D. Ariz. 2007).  Despite having the correct name, home address, work, home and cell phone numbers, Social Security number, Arizona driver's license number, and date of birth of the correct suspect, the investigators pursued, received and executed a warrant for the arrest of the misidentified suspect.  Id. at *4.  In Schneider, the court granted qualified immunity for the arresting officer, 749 A.2d at 352; whereas in Kerns, the court did not.  The underlying reason for those opposing results is the reasonableness of belief in the existence of probable cause.  Compare Schneider, 749 A.2d at 362 (holding reasonable but mistaken belief in probable cause is not a violation of a constitutional right); with Kerns, 2007 WL 55227 at *14 (holding the identity of the actual suspect was "reasonably ascertainable").

A police officer can defend a § 1983 claim by establishing: (1) that he or she acted with probable cause; or, (2) if probable cause did not exist, that a reasonable police officer could have believed it existed.  Kirk v. City of Newark, 536 A.2d 229, 234 (N.J. 1988) (citing Anderson, 483 U.S. at 663-64).  When applying for a warrant pursuant to an affidavit, an officer cannot use the issuance of a warrant alone to establish that probable cause exists, rather the officer must make an "independent assessment of whether his or her affidavit establishes probable cause."  Schneider, 749 A.2d at 350

10

(citing <u>Malley v. Briggs</u>, 475 U.S. 335, 345-46 (1986) (holding that ideally judges would not approve an unreasonable warrant request, but in reality some judges will fail to perform and thus it is reasonable for an officer to exercise "reasonable professional judgment")). Although an affidavit need not be "teeming with detail," the affidavit must provide sufficient facts for an independent judicial determination of probable cause; otherwise, the affidavit fails the Fourth Amendment's particularity requirement. <u>Id.</u> at 352. Probable cause does not exist as a matter of law where a supporting affidavit contains only the name of an accused suspect. <u>See</u> <u>id.</u>; <u>see also</u> <u>State v. Masco</u>, 247 A.2d 136, 138 (N.J. Super. Ct. App. Div. 1968) (holding validity of a warrant commanding search of a person depends on whether or not it describes the person to be searched with such particularity that he may be identified with reasonable certainty); <u>State v. Malave</u>, 316 A.2d 706, 708 (N.J. Super. Ct. App. Div. 1974) (holding description in warrant of person to be searched should be as particularized as possible).

### a) Did probable cause exist?

One question before this Court is whether an officer, who had no part in the issuance of a warrant, attempting to execute it despite containing only the name and address of a suspect, lacked probable cause as a matter of law. The warrants issued for the arrest of Jason Lucas at 94 Club Place, Galloway, New Jersey, contained nothing more than the name and address of the accused, despite the issuing court's possession of the actual driver's license number of the suspect. (Barker Certif., Exh. B.) The <u>Kerns</u> court in the District of Arizona noted that "a name alone is an inherently unreliable point of identification" and is "grossly unjustifiable when unique identifiers, such as a Social Security number or *a driver's license number*, are at hand." 2007 WL 552227 at

*8 (emphasis added).  Furthermore, the Galloway Police Department Standard Operating Procedure on arrests states that before executing an arrest warrant, officers should check the A.T.S./A.C.S. system to determine if a warrant is valid.  (Reynolds Certif., Exh. C at Galloway 8)  The record is unclear whether Officer Welsh ever checked the validity of the warrants in the system or if he ever physically possessed them.  However, the record is clear that upon attempting to serve the warrants at 94 Club Place, Officer Welsh called dispatch to get a current address for Jason Lucas, seemingly without cross checking the address on the warrant with the new address provided.  (Welsh Affidavit at ¶6.)

This failure is illuminating for two reasons.  First, Jason J. Lucas lived at 622 South Second Avenue his entire life with the exception of college.  (Jason J. Lucas Deposition at 10, lines 15-16.)  Second, when Officer Chris Doyle of the Galloway Police Department questioned the real estate company at 94 Club Place, he was quickly led to the Jason Lucas for whom the warrant was issued.  This suggests that even a simple examination of the evidence or resources at Officer's Welsh's disposal would have led him to the correct Jason Lucas.  Although the Court should not look upon the actions of an officer with the benefit of hindsight, see Saucier, 533 U.S. at 205, the Court should critically examine the circumstances the officer faced, particularly where a fundamental right is implicated.  See Schneider, 749 A.2d at 369 (holding "it is the duty of the person making an arrest to take precaution against arresting an innocent person, and this require[s] the making of such investigation as the circumstances permit") (quoting Woods v. Harrell, 596 S.W.2d 92, 96 (Tenn. Ct. App. 1979)); but see Berg, 219 F.3d at 273 (holding the Constitution does not mandate investigation into every claim of

12

innocence or mistaken identity by an officer executing a warrant).

Notably, service of these warrants was attempted on May 20, 2003 by the Galloway Police Department, seemingly without additional investigation.  (Reynolds Certif., Exh. C at Galloway 17.)  This suggests that the circumstances permitted further inquiry as to whether the warrant was in fact valid or, at a minimum, suggests that time permitted inquiry into where the proper Jason Lucas lived.  Officer Welsh also could have returned the facially invalid warrant to Hamilton Township in accordance with Galloway Police Department Standard Operating Procedure rather than executing it on May 21, 2003.  Under these circumstances, the warrant was facially invalid and probable cause did not exist as a matter of law.

### b) Did Officer Welsh have a reasonable belief in the existence of probable cause?

Ordinarily, an officer can presume a warrant is supported by probable cause and thus valid if such a belief is objectively reasonable.  Berg, 219 F.3d at 273.  Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law."  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley, 475 U.S. at 343).  However, "mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." Schneider, 749 A.2d at 350; see also Orsatti v. NJ State Police, 71 F.3d 480, 483 (3d Cir. 1995) (holding officers only lose qualified immunity where clear indicia that probable cause unreasonable).  Under New Jersey law, the standard for judging whether an officer had a reasonable belief in the existence of probable cause, even where it did not in fact exist, is objective reasonableness.  Id. at 358.

13

Under an objective reasonableness standard, Officer Welsh did not have a reasonable belief in the existence of probable cause. The key difference between these facts and the facts in <u>Schneider</u>, where qualified immunity was granted, is that the officer there relied on substantial information to support his affidavit securing a warrant. 749 A.2d at 358-60 (e.g. advice of counsel, information from two informants, DMV records check, imminency of future crimes). Here, Officer Welsh had no indicia of probable cause other than the warrant, which contained nothing more than a name and last known address for a suspect. Had the wrong Jason Lucas been arrested at the address provided, Officer Welsh's belief in probable cause would likely have been objectively reasonable. <u>See, e.g.</u>, <u>Ramirez v. New Jersey</u>, 81 F. Supp. 2d 532, 538 (D.N.J. 2000) (holding reliance on computer record of warrant provides reasonable basis for detention); <u>State v. Green</u>, 723 A.2d 1012, 1015 (N.J. Super. Ct. App. Div. 1999) (holding lawful arrest by officer of wrong person pursuant to valid warrant describing similar person). But those are not the facts before the Court.

Instead, Officer Welsh took affirmative steps to change the object of the warrant to Jason J. Lucas, and that act is something considerably more than simply executing a judicially authorized warrant. The Supreme Court has stated that "if officers of reasonable competence could disagree on [probable cause], immunity should be recognized." <u>Schneider</u>, A.2d at 360 (quoting <u>Malley</u>, 475 U.S. at 341). However, our Constitution does not permit an officer to serve a warrant providing nothing more than a name and address on *anyone* matching that name; such is beyond the bounds of reasonable belief and is impermissible. <u>See</u> <u>Marron v. United States</u>, 275 U.S. 192, 196 (1927) (holding particularity requirement of Fourth Amendment "makes general

14

searches under [warrants] impossible and prevents the seizure of one thing under a warrant describing another.  As to what [or who] is to be taken, *nothing is left to the discretion of the officer executing the warrant*." (emphasis added)).  No undue burden is placed on New Jersey's municipal police departments in requiring that officers executing warrants be left with no discretion on whom to serve them.  While mistakes will invariably happen, the Fourth Amendment guarantees that mistakes will only be made after proper diligence and regard for our notions of liberty and justice is accorded.  Thus, taking the facts in a light most favorable to the Plaintiff, the facts alleged make out a constitutional violation.

### 2) Was the right sufficiently clear?

The second inquiry under qualified immunity is if a constitutional right was violated, was the right sufficiently clear?  <u>Saucier</u>, 533 U.S. at 201-202.  The New Jersey Supreme Court has held that under the United States and New Jersey Constitutions, the law of probable cause was clearly established by January 1981.  <u>Schneider</u>, 749 A.2d at 350.  Plaintiff's right to be free from seizure without probable cause was established as a matter of law on May 21, 2003.  Therefore, Officer Welsh is not entitled to qualified immunity.

## F. False Arrest–Officer Welsh

The added caveat in this case, however, is that the executing officer was not the one who personally seized the suspect.  If Officer Welsh did not in fact ever "arrest" Plaintiff as alleged, then the above analysis is moot because there cannot be an unconstitutional seizure without an actual seizure.  Under the Fourth Amendment, a person is seized "only if, in view of all the circumstances surrounding the incident, a

reasonable person would have believed that he was not free to leave." <u>Michigan v. Chesternut</u>, 486 U.S. 567, 574 (1988) (quoting <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980)).  Seizure occurs only when a person is detained by "means intentionally applied" to terminate his freedom of movement by means of physical force or by show of authority.  <u>Brower v. County of Inyo</u>, 489 U.S. 593, 597-98 (1989).  No seizure occurs when a reasonable person would feel free to "disregard the police and go about his business" or where "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." <u>United States v. Kim</u>, 27 F.3d 947, 951 (3d Cir. 1994) (quoting <u>Florida v. Bostick</u>, 501 U.S. 429, 434 (1991)).

Under New Jersey common law, the tort of false imprisonment is defined as when an actor improperly constrains a person's freedom of movement by force or by threats of force communicated through conduct or words.  <u>Maietta v. USPS</u>, 749 F. Supp. 1344, 1366 (D.N.J. 1990).  For threats to be held to be a constraint, they must be such as would "induce a reasonable apprehension of force[,] and the means of coercion [must be] at hand." <u>Id.</u> at 1367 (quoting <u>Earl v. Winne</u>, 101 A.2d 535, 539 (N.J. 1953)). There is no jury question where the apprehension of force was unreasonable.  <u>Id.</u>  New Jersey requires two elements for false imprisonment: (1) detention of the person against his or her will, and (2) a lack of proper legal authority or "legal justification." <u>Mesgleski v. Oraboni</u>, 748 A.2d 1130, 1138 (N.J. Super. Ct. App. Div. 2000).

Taking the facts in a light most favorable to the Plaintiff, Jason J. Lucas was seized and falsely imprisoned under either of the above standards.  Galloway asserts that because there was no contact between Officer Welsh and Plaintiff, there was no seizure. (Galloway Brief at 15.)  However, this is a misunderstanding of the law.  Under <u>Kim</u>, if a

reasonable person would not feel free to disregard the police, that is a seizure.  27 F.3d at 951; see also Galloway Standard Operating Procedure: "All that is required [for an arrest] is that a reasonable person believes that they are not free to leave a particular location or otherwise terminate an encounter with police." (Reynolds Certif., Exh. C at Galloway 8.)  Furthermore, an officer acting under the color of law who, "directly and intentionally applies the means by which another is seized in violation of the Fourth Amendment," is liable under § 1983.  Berg, 219 F.3d at 271-72; see also Bartletta v. Golden Nugget Hotel Casino, 580 F. Supp. 614, 617-18 (D.N.J. 1984) (holding taking into custody need not be done violently to constitute arrest, nor is fact that individual taken into custody under own power dispositive on issue of arrest).

William Lucas, Plaintiff's father, stated that Officer Welsh said Plaintiff should report immediately to the Hamilton Township Police Department or he would be arrested on the warrant. (William Lucas Affidavit at ¶ 2.)  William Lucas then conveyed that message to his son. (Id. at ¶ 3.)  In reliance on that message prompted by Officer Welsh's directive, Plaintiff reasonably felt obliged to go to Hamilton Township Police Department or risk arrest upon his return home. (Jason J. Lucas Affidavit 12/13/2006 at ¶ 5.)  For Officer Welsh to assert that there was no seizure under the facts alleged is to effectively argue that citizens are free to ignore the police when they arrive to execute a warrant.  Such an assertion contravenes vital public policy that people must obey officers of the law.  The courtroom and not the street is the appropriate forum for constitutional remedies when a person feels his rights have been violated.  Officer Welsh intentionally applied means by way of a show of authority on Plaintiff to secure his detention and that is a seizure under federal law.

17

Taking the facts in a light most favorable to the Plaintiff, Officer Welsh's actions also constitute a tort under New Jersey common law.  First, Plaintiff was detained against his will.  Plaintiff alleges that he felt that if he did not turn himself in to the Hamilton Township Police Department, he was going to be arrested.  (Jason J. Lucas Affidavit 12/13/2006 at ¶ 3.)  This does not suggest consensual detainment.  Even if Plaintiff's actions were consensual and he was not detained until he reached Hamilton Township, liability would still attach for Officer Welsh's actions because his efforts set the arrest in motion.  Berg, 219 F.3d at 272; see also Bartletta, 580 F. Supp. at 617-18.  Second, Officer Welsh detained Plaintiff without proper legal authority.  As discussed at length above, Officer Welsh lacked both probable cause in fact and a reasonable belief in the existence of probable cause.  This suffices for lack of legal authority under the second prong of New Jersey's false imprisonment tort.  See Mesgleski, 748 A.2d at 1138 (holding "a basis for suit for false arrest arises where the aggrieved party is arrested without legal authority, as where he is arrested pursuant to a process that is void").  Therefore, taking the facts alleged in a light most favorable to the Plaintiff, Officer Welsh falsely arrested Jason J. Lucas under New Jersey law.

## G. False Arrest–Officer Robell & Hamilton Township

Although Officer Robell bears no liability in this action, a review of his actions under the federal and state law both informs the analysis above and provides further exculpatory grounds for Officer Robell and Hamilton Township.  Under federal law, taking the facts alleged as true, Plaintiff was seized by Officer Robell when he went to the Hamilton Police Department.  Plaintiff alleges that he did not feel he was allowed to

leave until Officer Robell advised him he could do so.  (Jason J. Lucas Affidavit 12/13/2006 at ¶ 9.)  This statement certainly satisfies the standard that a reasonable person would not feel he was free to leave under the circumstances.  Important too is that Plaintiff was released "ROR" rather than because he was not the wanted Jason Lucas.  (Jason J. Lucas Deposition at 21, lines 6-13.)  Using a legal term of release rather than simply telling the suspect he was free to go is certainly indicia that he was arrested.

However, even though there was a seizure at the Hamilton Police Department, it does not make out a constitutional violation because Officer Robell had probable cause to seize Plaintiff.  Jason J. Lucas went to the police department stating that he was there to turn himself in on a warrant.  Even though he claimed that he was not the person named in the warrant, Officer Robell had reasonably trustworthy information to detain him.  See Schneider, 749 A.2d at 349-50 (holding reasonably trustworthy information is sufficient for probable cause).  Even if probable cause did exist in fact, a reasonable officer in Robell's position would have thought that a man presenting himself in response to a warrant with the same name as the person named in the warrant should be detained.  Thus, it appears that Officer Robell's actions were reasonable.  Notably, Officer Robell expressed concerns that Plaintiff was not the person named in the warrant, (Robell Deposition at 6, lines 11-14), and took affirmative action to call the clerk of the court to clarify the matter, (id. at 12, lines 6-8).  That Plaintiff was required to return to Hamilton Township to state his innocence was a decision of the court.  (Id. at 14, lines 16-23.)  Therefore, Officer Robell acted with probable cause as a matter of law and there is no constitutional violation.

Taking the facts in a light most favorable to the Plaintiff, claims against Officer Robell or Hamilton Township do not satisfy a cause of action for false imprisonment under New Jersey law.  Plaintiff's claim meets the first prong of the false imprisonment test: he was detained against his will.  See Mesgleski, 748 A.2d at 1138.  Plaintiff was only at the station pursuant to Officer Welsh's orders.  Upon arrival, his stay at the Department was not prompted by his own volition, but rather by the reasonable feeling that he was not free to leave.  (Jason J. Lucas Affidavit 12/13/2006 at ¶ 8.)  But as to the second prong, there is no claim for false imprisonment because proper legal authority existed for detaining Plaintiff.  See Mesgleski, 748 A.2d at 1138.  Officer Robell had probable cause in fact, or at a minimum, a reasonable belief in the existence or probable cause, to detain Plaintiff.  Thus, as a matter of law, there is no claim against Robell for false imprisonment under New Jersey law.

## H. Immunity Under N.J. Stat. Ann. § 59:2-3(a) & (b)–Hamilton Township

Since Officer Robell was acting with probable cause as a matter of law, analysis of immunity under New Jersey Tort Claims Act is unnecessary.  However, the Court will briefly review the issue for the parties.  In relevant part, the Tort Claims Act provides: "(a) A public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity; (b) A public entity is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative nature . . . ."  N.J. Stat. Ann. § 59: 2-3(a) & (b) (2006).  Immunity rather than liability of a public entity is the general rule under the Tort Claims Act.  Ritchie v. Cahall, 386 F. Supp. 1207, 1209 (D.N.J. 1974); Collins v. Union County Jail, 696 A.2d 625, 628 (N.J. 1997).  Determining

20

whether governmental action is discretionary generally depends upon whether the decision is a high level policy decision.  Strauss v. Township of Holmdel, 711 A.2d 1385, 1393 (N.J. Super. Ct. Law Div. 1997) (citing Costa v. Josey, 415 A.2d 337 (N.J. 1980)). Generally "high level policy decisions classified as discretionary acts involve planning, and are distinct from ministerial acts, which pertain merely to operations which are not immunized." Id. (quoting Dix Bros. v. State, 440 A.2d 484, 486 (N.J. Super. Ct. Law Div. 1981)).

Officer Robell's actions are immunized under the Tort Claims Act.  Under New Jersey law, "once a warrant is issued or probable cause comes into existence, it becomes the officer's duty to arrest the suspect . . . ." State v. Jones, 667 A.2d 1043, 1048 (N.J. 1995) (quoting Smith v. Gonzales, 670 F.2d 522, 527 (5th Cir. 1982)).  Furthermore, "officers have no discretion in making arrests where there is an outstanding warrant." Id. (quoting Stone v. State, 620 So.2d 200, 201 (Fla. Dist. Ct. App. 1993)). While Officer Robell was performing ministerial acts in the sense that he was going through specific procedures, his actions were in accordance with the law.  Acting with regard to the law is certainly not ministerial action and is more appropriately characterized as a high level policy decision or action of a legislative nature.  Hamilton Township is immune from state tort claims under the New Jersey Tort Claims Act.

**I. Claims Against the Judiciary**

Defendant Hamilton Township responded to purported claims against the judiciary made by Plaintiff.  Plaintiff has failed to allege any claims against the judiciary or name any officers thereof as defendants in this suit.  Therefore, this decision does not

21

reach that matter.

## J. Wrongful Prosecution

Plaintiff appears to have indirectly alleged a claim of wrongful prosecution.  Such a claim was not directly addressed by any Defendant nor re-asserted by the Plaintiff in opposing summary judgment sought on the entirety of the Complaint.  Nevertheless, the Court will address that claim briefly here.

To establish malicious prosecution under § 1983, a Plaintiff must establish that: (1) the defendants initiated a criminal proceeding; (2) which resulted in a seizure; (3) the criminal prosecution resulted in plaintiff's favor; (4) the proceeding was initiated without probable cause and (5) the defendant acts maliciously or for a purpose other than bringing the plaintiff to justice.  Santiago v. City of Vineland, 107 F. Supp. 2d 512, 566 (D.N.J. 2000).  Under New Jersey law, malicious prosecution is: (1) a criminal action instituted by the defendant; (2) which was actuated by malice; (3) there was an absence of probable cause for the proceeding; and (4) it was terminated in plaintiff's favor.  Id. (citing Myrick v. Resorts Int'l Casino and Hotel, 726 A.2d 262, 266 (N.J. Super. Ct. App. Div. 1999)).

Under either the federal standard or state standard, taking the facts in a light most favorable to the Plaintiff, no claim for malicious prosecution exists as a matter of law.  Both standards require an absence of probable cause.  Although there was no probable cause for Officer Welsh to execute the warrants, once they were executed, Plaintiff had to be brought before a court to dismiss the charges against him.  (Jason J. Lucas Deposition at 25, lines 4-5.)  The record suggests that the Jason Lucas sought

pursuant to the warrants could not be arrested until such administrative action was taken.  (Id. at 37, lines 5-10.)  The execution of the warrants created the requisite probable cause that warranted the administrative action taken in this case. Furthermore, the charges were terminated in the Plaintiff's favor.  (Id. at 35.)  Thus, no claim for malicious prosecution exists as a matter of law.

**K. Cross Claim**

Since Hamilton Township bears no liability in this action as a matter of law, Galloway Township, Galloway Township Police Department, Officer Welsh, Officers John Does (1-20), and Officers John Does (21-40) are entitled to summary judgment as to the cross claim by Hamilton Township, Hamilton Police Department, and Chief of Police McKeen.

### III. CONCLUSION

For the reasons given above, as well as those articulated on the record during oral argument on June 14, 2007,

IT IS ORDERED this 20th day of June, 2007 that the motion of Defendants Hamilton Township Police Department, Township of Hamilton, and Chief of Police Jay McKeen for summary judgment pursuant to Fed. R. Civ. P. 56 [16] is hereby <u>GRANTED</u>.

IT IS FURTHER ORDERED that the motion of Defendants Township of Galloway Police Department, Township of Galloway, Chief of Police Keith M. Spencer, and Officer Kevin Welsh [12] is hereby <u>GRANTED IN PART</u> and <u>DENIED IN PART</u> in that summary judgment is granted as to Galloway Township Police Department, Township of Galloway, and Chief of Police Keith M. Spencer, but is denied as to Officer Kevin Welsh.

IT IS FURTHER ORDERED that as to the cross claim asserted by Defendants Hamilton Township Police Department, Township of Hamilton, and Chief of Police Jay McKeen, summary judgment pursuant to Fed. R. Civ. P. 56 is <u>GRANTED</u> for Defendants Township of Galloway, Galloway Township Police Department, Officer Kevin Welsh, Officers John Does (1-20), and Officers John Does (21-40).

IT IS FURTHER ORDERED that Defendants Officers John Does (1-20) and Officers John Does (21-40) are <u>DISMISSED</u> from suit pursuant to Fed. R. Civ. P. 21.

/s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.

24